## MRS. M. E. SMITH v. YOUNG & SCHIFFER.

(Filed September 9, 1903.)

1. **REMONSTRANCE—Burden of Proof.** In the trial of an application for liquor license, where a remonstrance has been filed, the burden is on the applicant to prove by competent evidence all matters which are, under the statute, incumbent on him to do or show in order to procure a license.

2. **SAME—Publication of Notice.** The law contemplates that the applicant for license shall select the newspaper and give his notice, and make proof both as to publication of the notices and the circulation of the papers. When it is alleged in the remonstrance that the notices have not been published in the two papers published in the county and having the largest circulation therein, the burden is on the applicant to prove such fact. He must make his own selection, publish his notices, and take the risks, and the county board has no jurisdiction until such proof is furnished.

3. **SAME.** Case of Watkins v. Greiser, 11 Oklahoma, page 302, reexamined, affirmed, approved and followed.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge.*

*H. A. Johnson,* for plaintiff in error.

*J. W. Quick,* for defendants in error.

Opinion of the court by

BEAUCHAMP, J.: On the 11th day of June, 1901, the defendants in error filed in the office of the county clerk of Noble county, an application and petition for a retail liquor license, which petition purported to bear the names of thirty-seven petitioners. On the 24th day of June, 1901, a remonstrance was filed against the issuance of such license, which remonstrance (omitting the caption) reads as follows:

"We, the undersigned, hereby remonstrate and protest against the issuance of license to sell malt, spiritous and vin-

ous liquors in the second ward of the city of Perry, O. T., to Young & Schiffer, for the following reasons and upon the following grounds, to-wit:

"1.   The petition asking for such license is not sufficient to give the county clerk or the county commissioners jurisdiction to grant such license, the same being especially defective and insufficient in this, to-wit: That said petition is not signed by thirty resident taxpayers of the second ward, or any other ward of the city of Perry; no person or persons is recommended as 'a man of respectable character' and a resident of this territory, as is required by law; there is nothing to show who compose the firm of Young & Schiffer, and it is impossible for the firm of 'Young & Schiffer' to be a 'man of respectable character,' and under the laws of Oklahoma no one but 'a man of respectable character' can  be granted such license; the petition does not state in what ward license is desired or in what ward the signers reside.   The notice is insufficient and has not been published in two newspapers having the largest circulation in Noble county, Oklahoma as is required by law.

"Therefore the undersigned respectfully ask that a time be set to hear said cause, and that such license be rejected."

This remonstrance is signed by Mrs. M. E. Smith and twenty-five others.

On the 1st day of July, 1901, the applicants filed an affidavit of proof of the publication of the notice for two consecutive weeks in the daily and weekly Enterprise Times and in the Perry Republican.   A trial was had before the board, and the county clerk ordered to issue a license to the defendants in error, J. W. Young and C. A. Schiffer.  Remonstrants then appealed the case to the district court of Noble county, and upon the record, the district court affirmed the action of the board of county commissioners, and di-

rected that license issue.    Motion for new trial was over-
ruled, exceptions saved, and the plaintiff in error brings case
here by petition in error for review.

The plaintiff in error sets forth seven assignments of
error in his petition in error and brief in this case.    It will
only be necessary to consider the 4th, as thereon a reversal
must be had, which is that the trial court "erred in not hold-
ing that said defendants in error failed to prove that their
publication notice was published for two weeks in the two
newspapers published in said county, having the largest cir-
culation therein."    The only evidence as to the publication
of the notice introduced by the applicants was first, the affi-
davits of the book-keeper of the daily and weekly Enterprise
Times and the foreman of the Perry Republican, to the effect
that the notice of the filing of the petition and application
for liquor license had been published in their respective
papers for two consecutive weeks.    Then J. W. Casey was
called to the stand and testified as follows:

"Q.    State your name?

"A.    J. W. Casey.

"Q.    Are you the editor of the Republican paper in this
town?

"A.    Yes.

"Q.    State the circulation of the paper?

"A.    I cannot state exactly, but I have an affidavit that
shows.

"Q.    When did you make the affidavit?

"A.    Made on January 1.    Have 160 subscribers.

"Q.    Do you know the circulation claimed by other
papers at that time?

"A.    No sir.

"Q. . Has your paper one of the largest circulations in the county?

"A.   It has one of the largest."

Cross examination:

"Q.   Was it the daily or weekly?

"A.   The weekly, and I think the daily; but am not sure.

"Q. Do you know what day it was published in the weekly?

"A.   Not without looking.   I can look it up.   I find it was two weeks ago Friday.

"Q.   Do you know how large the circulation is of your daily paper throughout this county?

"A.   Could not say the exact number.   About 300 in Perry.

"Q.   The daily does not have the largest circulation of any paper in the county?

"A.   Not as large as the weekly.

"Q.   Did you publish it in both the weekly and daily?·

"A.   Yes.

"Q.   But you do not know when you first published it in the weekly?

"A.   Could not say positively, but I think two weeks ago Friday."

H. P. Larsh, county clerk, testified:

"Q.   You may state if you know what two papers have the largest circulation?

"A.   I do not know only from affidavits on file.

"Q.   You may state what these affidavits show?

"Q.   How old are these affidavits?

"A.   Probably two years.

"Q.   You may state what two papers have the largest circulation?

"A.   I do not know which has the largest circulation, but I know they are always scrapping around about the legal papers.

"Q. What papers at this time show the largest circulation?

"A. The Enterprise Times and Perry Republican.

"Q. How many daily papers in town?

"A. Enterprise Times and Republican.

"Q. Did you cause these notices to be published in both papers?

"A. It went to the weekly papers.

"Q. Those affidavits you based your judgment on were weekly papers, were they not?

"A. Yes."

Also W. B. Priddy:

"Q. You are foreman of the Enterprise Times, are you not?

"A. Yes.

"Q. You may state if you know whether or not the liquor license of Schiffer & Young was published in your paper?

"A. Could not say without looking up files.

"Q. You may examine this and state if it was printed in your paper?

"A. Yes.

"Q. What circulation has your paper in the Territory of Oklahoma?

"A. Could not say.

"Q. Do you know what circulation it has compared with other papers? ?

"A. I could not say.

"Q. How many do you print each week?

"A. Print 500 daily and 1,000 weekly.

"Q. You mean that is the circulation in the territory?

"A. I mean it is the circulation altogether. They go all over the United States."

Cross examination:

"Q. This notice was published in the daily, was it not?

"A.   I cannot tell you that.   It was first published in the Enterprise Times, but it does not say when.   It should, but it don't."

Also V. C. Welch:

"Q.   Are you proprietor of the Enterprise Times?

"A.   Yes.

"Q.   Where is it published?

"A.   Perry, Oklahoma.

"Q.   You may state the circulation your paper has at this time?

"A.   Between 800 and 900.

"Q.   State whether it is the largest circulation in the county of Noble?

"A.   I contend it is."

Cross examination:

"Q.   Do you know what the circulation of your weekly paper is in this county?

"A.   Could not say in exact numbers—between 800 and 900.

"Q.   The circulation in this county—you do not understand what I mean?

"A.   Yes, I understand you exactly.

"Q.   You say that is the largest paper?

"A.   I did not say it was the largest."

The above is all the evidence offered on the part of the applicants to prove that the papers in which their notice was published were the two newspapers published in Noble county having the largest circulation therein as required by section 3397, Wilson's Statutes, which provides that "No action shall be taken upon such license until at least two weeks' notice of the filing of the same has been given by publication in two newspapers published in said county having the largest circulation therein.   *   *   *   "

This question is not new in this territory. The same question was before this court in the case of *Watkins v. Grieser,* 11 Okla 302, in which case it was held:

"The giving of the notice as required is necessary in order to give jurisdiction to the county authorities to take any action on the application for license. If the notice is not given in the manner and for the time specified, the licensing authorities are clearly prohibited from taking any action, and proof of the giving of the notices for the time and in the manner required must be made in some other manner. The clerk or county board cannot take judicial notice of such facts, but must require competent proof, before they have any power or authority to consider the application. *    *    *

"The applicant should select the newspapers, give his notices and then make proof of the publication of the notices. *    *    *

"The statute is mandatory in its terms. No action shall be taken until the notice of the filing of such application has been published two weeks in two newspapers published in the county, having the largest circulation therein. There is no room for the exercise of discretion, and the question of good or bad faith is no element in the transaction. The applicant is required to give notice of his application; he has it within his power at the time to go to the publishers and ascertain the extent of their circulation; he takes the risk when he makes the selection, and if he makes a mistake, it is his own fault, and he must suffer the consequences. *    *    *    That unless service is made in the manner and for the time provided by statute, the court will not take jurisdiction.

"The law in this case provides the manner of obtaining service on the public; the notice is a jurisdictional matter, and a failure to give the notice as required by law will

defeat the application, or at least suspend the same until the required notice is given.

"In cases where no protests are filed against the issuance of license, the affidavit of the publisher that his paper is one of the newspapers published in the county having the largest circulation therein, would make a *prima facie* case, and would be sufficient to authorize the county clerk or board to act, but where the proceedings are contested by protest or remonstrance, and the allegation is made, as in this case, that the notices were not published in the two newspapers published in the county having the largest circulation therein, the county board is required to hear competent evidence, and pass upon the question, and the applicant is required to furnish this proof, or on failure to do so, have his application denied."

The facts in this case are substantially the same as the facts in the case of *Watkins v. Grieser, supra,* except the evidence of the witnesses above quoted, and which was admitted over the objections of the remonstrants, and which was wholly incompetent, and the objection should have been sustained as the evidence was not sufficient to warrant the board in finding that the notice was published as required by the statutes. The applicants having failed to furnish proof of the publication of their notice as required, the application for license should have been denied. We have carefully re-examined the case of *Watkins v. Grieser, supra,* and are fully satisfied with the decision and opinion in that case. It, therefore, follows that the district court erred in not reversing the order of the county board. The judgment of the district court is reversed, and the case remanded, with directions to reverse and vacate the order of the board of county commissioners granting such license, and that the defendants in error pay the costs of this appeal.

Hainer, J., who presided in the court below, and Pancoast, J., who was of counsel in the cause below, not sitting; Gillette, J., absent; all the other Justices concurring.